[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14102

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DAVID EARL BUTLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:18-cr-00032-WLS-TQL-1

_____

Before WILLIAM PRYOR, Chief Judge, LUCK, and ED CARNES, Circuit Judges.

PER CURIAM:

David Butler was convicted of being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).  In this direct appeal of that conviction he raises a number of issues.  Because the parties and the district court are aware of the facts and the procedural history, we will not dwell on them.

## I. The Motion to Suppress

Butler contends that the district court erred in failing to grant his motion to suppress.  This contention has four components.

## 1. The Photo Lineup

First, Butler argues that the photo lineup was unduly suggestive and, as a result, evidence that three witnesses had picked out his photo as the shooter should have been suppressed. The district court ruled this issue had been "waived" because Butler failed to allege any specific facts regarding the photo lineup.  In the alternative, the court ruled that the photo lineup "did not appear to be unduly suggestive," and the identifications were not unreliable.

In his brief, Butler has not even mentioned, much less challenged, the district court's alternative ruling that this issue had been waived because it was not properly presented.   Our circuit law is clear and firm that: "When an appellant fails to challenge properly

on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014); *accord United States v. Maher*, 955 F.3d 880, 885 (11th Cir. 2020); *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1181 (11th Cir. 2019).

In any event (or "alternatively"), even putting aside that first ground of the district court's ruling, we would still affirm because the district court did not commit clear error in finding that the photo lineup, which was conducted separately with each of the witnesses, was not unduly suggestive. *See United States v. Smith*, 967 F.3d 1196, 1203 (11th Cir. 2020) ("We review the district court's finding that the identification procedure was not unduly suggestive only for clear error . . . ."). Not only was that finding not clear error, but it was not error at all; we agree with the district court that "nothing in the record indicates that the photos themselves or the officer's statements or actions were unduly suggestive."

## 2. The Arrest Warrants

The second component of Butler's motion to suppress was aimed at the arrest warrants and involved his contention that there was no probable cause to support them. There was. Three witnesses had individually picked Butler out of the photo lineup as the shooter, and as we have just held, that lineup was not unduly suggestive. That by itself is enough to establish probable cause.

### 3. The Search Warrant

The third component of Butler's motion to suppress was aimed at the search warrant and involved his contention that there was no probable cause to support it. There was. When the officers knocked on his door, they smelled marijuana. Some smelled raw marijuana and some burnt marijuana, but there is no reason there couldn't have been both states of it at the apartment. And, in any event, Butler admitted to the officers that he had recently been smoking marijuana in the apartment. That is more than enough to supply probable cause for a warrant to search the house for marijuana, which is what the warrant authorized.

### 4. The Confession

The final component of Butler's motion to suppress involved his videotaped and written confession to possession of the firearm. He confessed at the police station after he had been arrested, given *Miranda* warnings, and waived his rights. The warnings and waiver of rights and the confession itself were all recorded on videotape. Butler contends that his waiver of his rights was not knowing and intelligent because he, as he puts it in his brief to us, "had smoked marijuana prior to the arrival of law enforcement" and may have "still [been] under the influence of marijuana during his custodial interrogation." The speculative way Butler words his argument, without ever actually stating that he was under the influence, is not enough. And, as the district court pointed out in rejecting this argument, Butler "alleged no specific facts to indicate that he did not knowingly waive his rights." Of course, smoking

marijuana is not enough to render a *Miranda* waiver invalid. *Cf. Atkins v. Singletary*, 965 F.2d 952, 962 (11th Cir. 1992) (holding that a defendant's "mental impairment and his alcohol and drug consumption" did not invalidate his waiver of his *Miranda* rights); *United States v. Gaddy*, 894 F.2d 1307, 1312 (11th Cir. 1990) (affirming a *Miranda* waiver by a defendant with "a history of emotional problems and addiction to his prescribed drugs").

## II. The Exclusion of Evidence Involving Matchett

Butler complains about a number of rulings the district court made involving evidence from and about Ieshia Matchett who was unavailable to testify because her counsel assured the court that if called to testify she would invoke her Fifth Amendment right not to do so. A defendant does not have the right to require a witness to invoke her Fifth Amendment privilege in front of the jury. *See United States v. Beechum*, 582 F.2d 898, 909 (5th Cir. 1978) (en banc); *United States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir. 1974) ("If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand.") (quotation marks omitted).[1]

Butler also contends that the district court abused its discretion in refusing to let him put into evidence an affidavit that Matchett had signed stating that the gun in question was hers, and not

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Butler's. Unfortunately for Butler, before trial Matchett recanted that affidavit and signed another one swearing that Butler had talked her into signing the first affidavit to "claim the gun to help him out." That statement, she swore in her second affidavit, "was a lie . . . saying that [the gun] was [hers]."

Butler argues Matchett's recanted affidavit was admissible as a statement against interest under Fed. R. Evid. 804(b)(3). The district court correctly ruled it was not because there was an absence of the required "corroborating circumstances [that] clearly indicate the trustworthiness of the statement." *United States v. Thomas*, 62 F.3d 1332, 1337 (11th Cir. 1995). Butler also argues that the recanted affidavit was admissible under the Fed. R. Evid. 807(a) residual hearsay rule, but it did not qualify under that rule either because it lacked "circumstantial guarantees of trustworthiness" and "attributes of trustworthiness not possessed by the general run of hearsay statements." *United States v. Fernandez*, 892 F.2d 976, 980 (11th Cir. 1989) (quotation marks omitted).

Butler sought to introduce evidence that Matchett had unsuccessfully sought to purchase a firearm and later succeeded in doing so, although the firearm she purchased was different from the one that Butler was convicted for possessing. One way Butler wanted to get those facts before the jury was by forcing Matchett to testify to them. But the district court ruled that she would not be compelled to testify on that subject given her Fifth Amendment privilege against self-incrimination. (Apparently, the thought was that Matchett may have had some criminal exposure as an aider

20-14102                Opinion of the Court                7

and abettor of Butler's crime if she was purchasing the firearm for him.)  The district court also reasoned that since this was not the actual firearm involved in the case the probative value of allowing evidence about it would have been outweighed by the danger of confusing the jury.  *See United States v. Machado*, 886 F.3d 1070, 1085 (11th Cir. 2018); Fed. R. Evid. 403.  The district court did not abuse its discretion in making that judgment call.

Nor did the district court's ruling violate Butler's Fifth or Sixth Amendment right to present evidence favorable to him, especially since the evidence was only barely, if at all, favorable to him. *See United States v. Gillis*, 938 F.3d 1181, 1195 (11th Cir. 2019) ("[T]o show he was deprived of his constitutional right to present a defense, [the defendant] must demonstrate a compelling reason for making an exception to" the rules of evidence.).

And, then, there is the fact that if the exclusion of any of the evidence Butler wanted to present was error, that error was harmless beyond a reasonable doubt.  As the district court pointed out: "The evidence of Butler's guilt here is very strong. Shortly after his arrest, Butler confessed immediately in an interview that the gun was his, described how he purchased the gun and the seller, described the gun, and identified the exact location where the gun was located in the apartment" where the evidence indicates he lived.

### III.  Miscellaneous

Butler also contends that the evidence was insufficient to convict him, but it was plenty sufficient.

And he contends the cumulative effect of the errors the district court committed deprived him of a fair trial. But, as we have discussed, the district court did not commit any errors. He was not deprived of a fair trial.

**AFFIRMED.**[2]

---

[2] This case was originally scheduled for oral argument, but under 11th Cir. R. 34–3(f) it was removed from the oral argument calendar by unanimous consent of the panel.